UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOLCIM CANADA HOLDINGS LLC, a Maryland limited liability company, FKA LAFARGE NORTH AMERICA, INC., and LAFARGE PNW, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BARGE EAGLE, INC., A WASHINGTON CORPORATION, AND SALMON BAY BARGE LINE, INC.,<br><br>Defendants. | NO. 2:23-CV-432-RSM<br><br>ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the Court on Defendants Barge Eagle, Inc. and Salmon Bay Barge Lines, Inc. ("Barge Eagle")'s Motion for Partial Summary Judgment, Dkt. #19, and Plaintiffs Holcim Canada Holdings LLC and FKA LaFarge North America, Inc. ("Lafarge")'s Motion for Partial Summary Judgment, Dkt. #21.  In a nutshell, Lafarge alleges that it has overpaid Barge Eagle $722,208.03 under a contract.  Lafarge has brought claims for breach of maritime contract, unjust enrichment, negligent misrepresentation, and conversion.   Dkt. #5.  Barge Eagle moves to dismiss only the breach of contract claim.  Lafarge moves for the Court to rule that "Lafarge actually paid vessel hire back in 2009 and, as a result, Defendants had no right to demand repayment of that charge 11 years later with interest…. leaving the issues of settlement

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 1

and damages for trial." Dkt. #21 at 2. There have been no requests for oral argument. Having reviewed the submissions of the parties, the Court DENIES Barge Eagle's Motion and GRANTS Lafarge's Motion.

## II.   BACKGROUND

As these are motions for partial summary judgment, the Court will focus only on those facts necessary for resolving Lafarge's breach of contract claim and the factual issue above.

In 2009, Barge Eagle and Lafarge entered into a series of transactions related to the purchase of the barge Hannah 7701, later renamed the T/B LAFARGE EAGLE (the "Vessel"). Lafarge is a Canadian corporation that produces and distributes building materials across the West Coast and Canada, including through the use of barges. Dkt. #22 ("Smith Decl."), ¶¶ 3–6. To satisfy the requirements of the Jones Act, the Vessel needed to be owned by an American entity. Dkt. #23 ("Leigh Decl."), ¶ 4, Ex. A ("Smith Dep.") at 16:22–17:4. Thus, it was agreed that Barge Eagle, a Washington Corporation, would purchase the Vessel and "time charter" it to Lafarge for use.

Barge Eagle entered into a Vessel Sale Agreement (the "VSA") with a seller. Smith Decl., ¶ 14, Ex. F. To fund the VSA, as well as related expenses, Barge Eagle sought a loan from Bank of America (the "Loan"). Smith Decl., ¶ 9, Ex. A. Lafarge was not a party to either the VSA or the Loan. Lafarge executed a separate limited guaranty to secure Barge Eagle's obligation to repay the Loan to Bank of America should Barge Eagle default on its loan payments (the "Guaranty"). Smith Decl., ¶ 12, Ex. D.

On November 13, 2009, following the execution of the VSA, the Loan, and the Guaranty, Barge Eagle and Lafarge entered into a 10-year time charter for the Vessel (the "Time Charter"). Smith Decl., ¶ 13, Ex. E. Pursuant to the Time Charter, Lafarge agreed to pay annual basic hire

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 2

to Barge Eagle of $460,000 for use of the Vessel. *Id*. at 12. The payments were to occur on November 15 of each year. *Id.* The Time Charter directed Lafarge to make its basic hire payments not to Barge Eagle but directly to Bank of America to cover the loan payments. *Id*.

Despite the language in the Time Charter directing Lafarge to make its payments in this way, Barge Eagle stated in writing that the bank would withdraw the *first* loan payment from Barge Eagle's account with Bank of America, thereby negating the need for Lafarge to use its basic hire funds to cover that one payment. Smith Decl. Ex. M. Several hours later, Barge Eagle faxed an invoice to Lafarge for this first annual basic hire payment, giving Lafarge a credit for amounts Lafarge had already advanced to Barge Eagle and directing Lafarge to pay an additional $44,975. Smith Decl. Ex. N. Lafarge made this smaller payment as requested on Barge Eagle's invoice (the "2009 Basic Hire Payment"). *See* Dkt. #21 at 5–7.

These arrangements, perhaps unusual, were nevertheless detailed in emails between the parties both before and after the Time Charter was signed. On October 27, 2009, Kay Bell, Barge Eagle's sole owner, memorialized the arrangement thusly: "Barge Eagle pays Lafarge back its loan to Barge Eagle the balance of the amount owing on the 500,000 note and gets its note back from Lafarge (this amount is presently 265K sent to Kim [the escrow agent] and 50K sent to Barge Eagle)." Smith Decl., Ex. B.

On November 16, 2009, Mr. Bell sent an email to Bank of America stating that the bank would withdraw the first Loan payment from Barge Eagle's bank account rather than having it paid via a wire transfer from Lafarge. *Id*. at Ex. M. This email states:

> John [at Bank of America],
>
> Ted [at Lafarge] explained to me that Banc [sic] of America is taking its first payment of $460,000 from the Barge Eagle account # [redacted] which I expect to happen today and that the payments starting 11/15/10 and repeated annually thereafter will be wired by

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 3

>   Lafarge to the bank account owned by Bank of America described in the loan documents.
>
>   I expect the loan documents will be either redone or whatever is needed will be coming from you to me to reflect these changes. I suppose this will also impact the payoff at the end of the loan. I thank you very much for your effort in this transaction.
>
>   Kay

*Id.*

After Barge Eagle paid Bank of America the first loan payment, the remaining payments were sent from Lafarge to Bank of America per the Time Charter. There does not appear to be any dispute that Bank of America timely and fully received all of its loan payments.

Ten years later, in November 2019, Barge Eagle demanded payment of $722,208.03 arguing that that Lafarge failed to make the November 15, 2009, Basic Hire payment for the Vessel and that this payment had accrued ten years' interest. *See* Dkt. #5 at 3. Barge Eagle purported to award themselves a paper "credit" for the $722,208.03 and began claiming for themselves funds collected on third party subcharters that belong to Lafarge. *Id*.

This case was brought by Lafarge on March 22, 2023. Lafarge alleges, *inter alia*, that the Time Charter is "an enforceable maritime contract" and that Barge Eagle "breached the contract when it demanded and then purported to take payment of Basic Hire in an amount that exceeded amounts due under the Time Charter." Dkt. #5 at 4. Lafarge alleges that Defendants have failed to return or refund the overpayment. *Id*. at 4. Lafarge states that it is owed damages "in the amount of $722,208.03, plus applicable interest, costs, and fees." *Id*. at 5.

### III.    DISCUSSION

**A.    Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 4

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Barge Eagle's Motion for dismissal of Breach of Contract Claim**

A contract that relates to a ship, to commerce or navigation on navigable waters, or to maritime employment is a maritime contract. *Brusco Tug & Barge, Inc. v. St. Paul Fire & Marine Ins. Co.*, 897 F. Supp. 2d 1048, 1052 (W.D. Wash. 2012) (citing *Sundance Cruises Corp. v. American Bureau of Shipping*, 7 F.3d 1077, 1080 (2d Cir. 1993)). The Time Charter qualifies as a maritime contract given that it relates to the vessel T/B LAFARGE EAGLE. To establish breach of a maritime contract, a plaintiff must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *see also F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342,

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 5

1360 (S.D. Fla. 2007), *aff'd by* 308 F. App'x 389 (11th Cir. 2009) (identifying essential elements of breach of maritime contract claim).

A court's interpretation of a contract is generally a "mixed question of law and fact." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1985). "When the district court's decision is based on analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law." *Id.*; *see also Breaux v. Halliburton Energy Serv.*, 562 F.3d 358, 364 (5th Cir. 2009) ("Where 'the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law.'") (quoting *Foreman v. Exxon Corp.*, 770 F.2d 490, 496 (5th Cir. 1985)).

Barge Eagle moves for summary judgment dismissal of Lafarge's breach of contract claim solely because Lafarge cannot demonstrate adequate performance under the contract due to a failure to send the first payment to the right source. Dkt. #19 at 13–14. The other elements of this maritime contract claim are not before the Court.

Plaintiff Lafarge responds that, under Washington law, "substantial performance" will suffice to show adequate performance and that its breach was not material. Dkt. #27 at 5 (citing *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 221, 317 P.3d 543, 551 (2014)). Lafarge points to the above pre- and post-contract communications between the parties which seem to ratify the unusual payment arrangement. *Id.* at 7–8.

On Reply, Barge Eagle urges the Court not to look to Washington law but to rely solely on the term "adequate performance" to determine whether Lafarge's actions were adequate. Dkt. #29 at 3–4. Nowhere in Barge Eagle's briefing is that term expanded on. Barge Eagle argues that the Court cannot look at the communications between the parties based on the parole

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 6

evidence rule. *Id*. at 5–7. Barge Eagle asserts that the communications show it did not consent to the unusual payment arrangement. *Id*. at 8 ("At no point does Mr. Bell give his consent to this Transaction.").

Viewing the evidence and drawing inferences in the light most favorable to the non-moving party, the Court finds that the communications create a genuine dispute as to the question of adequate performance, precluding summary judgment dismissal of this claim. This is not because the communications go to the intent of the parties in crafting the terms of the contract at issue, but because they discuss what happened after the contract was crafted and go to whether or not there was adequate performance. Barge Eagle has failed to convince the Court that the facts of this case are so clear as to demonstrate a lack of adequate performance as a matter of law. It is not clear whether or not Barge Eagle consented to this arrangement, and the response, "I expect the loan documents will be either redone or whatever is needed will be coming from you to me to reflect these changes," creates a genuine dispute as to whether or not performance was adequate that is best resolved by a finder of fact. The Court is further persuaded by Barge Eagle's silence on this issue for ten years. There is a genuine dispute as to whether Barge Eagle ratified the arrangement or waived any claim to inadequate performance based on its inaction.

Finally, the Court agrees with Lafarge that the setoff language in the Guaranty "is immaterial and conflates the basic hire payments made by Lafarge pursuant to the Time Charter with the loan payments made by Barge Eagle to [Bank of America] and secured by a guarantee from Lafarge." *See* Dkt. #27 at 8. There is no dispute that Bank of America received all loan payments in full.

//

//

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 7

### C. Lafarge's Motion to Establish that it made 2009 Basic Hire Payment

As stated above, Lafarge moves for a ruling that it "actually paid vessel hire back in 2009 and, as a result, Defendants had no right to demand repayment of that charge 11 years later with interest…. leaving the issues of settlement and damages for trial." Dkt. #21 at 2. However, Lafarge's proposed order only asks the Court to find that "there is no genuine issue of material fact regarding Lafarge's payment of the 2009 Basic Hire Payment in 2009." Dkt. #21-1 at 2. Barge Eagle argues the requested relief is unclear. Dkt. #25 at 2. On Reply, Lafarge clarifies that it is moving for partial summary judgment not to establish liability for a claim but to "conclude that the fact that Lafarge paid Basic Hire in 2009 is established for purposes of trial." Dkt. #31 at 1.

The Court is permitted to "enter an order stating any material fact… that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). While it may not have been clear to Barge Eagle that this is the only relief Lafarge was seeking, the Court will grant this relief and this relief only.

Barge Eagle's opposition to this Motion focuses on attacking the admissibility of evidence. The Court agrees with Lafarge that the parole evidence rule does not operate to exclude the evidence cited by Lafarge in its Motion because "Exhibit B is an email from Defendants to Lafarge discussing plans for use of the proceeds of the Bank of America Loan, not the terms of the Loan itself, and arrangements that Defendants were making to pay Lafarge back on an entirely separate short-term credit agreement that Lafarge had extended to Defendants prior to and apart from the Time Charter or Bank of America Loan." Dkt. #31 at 3–4. The Court agrees that Exhibit B to the Declaration of Greg Smith "is relevant to how the parties ultimately performed under the Time Charter and provides context to why Defendants later waived strict performance

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 8

with the Time Charter term requiring Lafarge to make Basic Hire payments directly to BOA rather than Barge Eagle." *Id*. at 4.  In any event, the Court is not ruling on whether or not Barge Eagle violated any contractual language, simply that there is no dispute that certain 2009 Basic Hire payments occurred under the unusual arrangement detailed in contemporaneous emails between the parties.

Barge Eagle's remaining evidentiary objections lack merit.  *See* Dkt. #25 at 6–16.  The three different versions of the 2009 invoice have been adequately explained by Lafarge.  *See* Dkt. #31 at 5.  The Court need not see the fax cover sheet to find that this material fact is not in dispute.  Federal Rule of Evidence 1004 expressly provides that an original is not needed if "all the originals are lost or destroyed, and not by the proponent acting in bad faith." FRE 1004(a).  There is no reason to believe that the cover sheet contained any material information or was discarded in bad faith.  Furthermore, the Court agrees with Lafarge's footnote, "[e]ven if Barge Eagle's 2009 invoice were inadmissible, which it is not, summary judgment would still be appropriate. The contemporaneous emails and payment records conclusively show—with or without Barge Eagle's invoice—that Lafarge paid hire in 2009." Dkt. #31 at 6 n.1.  The Court concludes that Lafarge made its first Basic Hire payment in 2009 as detailed above.  The legal question of whether this was adequate under the contract remains for trial.  Other issues raised in briefing on this Motion can be dealt with at trial.

## IV.   CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion for Partial Summary Judgment, Dkt. #19, is DENIED.  Plaintiffs' Motion for Partial Summary Judgment, Dkt. #21, is GRANTED as set forth above.

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 9

DATED this 11th day of June, 2024.

　　　　　　　　　　　　　　　　　　　A

　　　　　　　　　　　　　　　　　　　RICARDO S. MARTINEZ
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT – 10